THE STATE v. WHITMER.

1. **Larceny:** POSSESSION OF STOLEN PROPERTY: EXPLANATION: EVIDENCE. Trial for the larceny of two horses. The horses were in the exclusive possession of the defendant and were traded off by him, within two days after they were stolen. *Held* that it was therefore incumbent on him to make some reasonable explanation of his possession consistent with his innocence, and that, though the evidence was not wholly consistent, it was for the jury to determine its effect, and that this court could not interfere with a verdict of "guilty," on the ground of insufficient evidence. (See opinion for evidence.)

2. **Criminal Law:** NEW TRIAL: NEWLY-DISCOVERED AND CUMULATIVE EVIDENCE. The statute does not authorize a new trial in a criminal case on the ground of newly-discovered evidence (*State v. Bowman*, 45 Iowa, 418), nor in any case, where the newly-discovered evidence is merely cumulative, as in this case. (See opinion for citations.)

The State v. Whitmer.

3. ——————: MISCONDUCT OF COUNSEL: APPEAL: RECORD. A complaint that the counsel for the state was guilty of misconduct in argument to the jury, in referring to the fact that the defendant did not testify in his own behalf, in violation of section 3636 of the Code, cannot be considered in this court, where the facts relied upon do not appear in the record; but where the court below refused a new trial on that ground, this court must presume that there was no such misconduct.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

FILED, MAY 20, 1889.

THE defendant was indicted, tried, and convicted of the larceny of two horses, the property of one J. B. Fallon. Defendant appeals.

*Watkins & Williams,* for appellant.

*A. J. Baker,* Attorney General, for the State.

ROTHROCK, J.—I. It is not disputed that two horses, the property of Fallon, were stolen from his pasture near Glenwood, in Mills county, on the night of the seventh of November, 1886. The animals were found in the city of Omaha, Nebraska, on the ninth day of the same month. One of them was in the livery stable of one Brown, and the other in the livery barn of one Demick. It appears from the evidence of D. A. Farrell, who was then sheriff of Mills county, and who found the team in Omaha, and who arrested the defendant at that place, that the defendant admitted that he sold or traded the horses to Brown and Demick within two or three days after they° were stolen. When arrested, defendant claimed that he got one of the horses from a farmer, and the other from another person, at a place called "Papillion," and that he did not know either of the persons from whom he got the horses. He gave no description of the persons. The sheriff told defendant that he would

*1. LARCENY: possession of stolen property: explanation: evidence.*

go to Papillion with him, but he expressed no willing-
ness to go, only that he wanted to have his bonds reduced,
and go himself.   It appears that the case has been twice
tried in the court below, and there is nothing in the
record showing that the defendant has at any time made
any effort to verify his statement that he bought the
horses at Papillion or elsewere.

It will be observed that the property was in the
exclusive possession of the defendant very soon after it
was stolen.   It was therefore incumbent on him to make
some reasonable explanation of his possession.   One C.
Wesley was a witness in behalf of the state, and he testi-
fied that he saw a man whom he believed to be the
defendant in possession of a team of the same description
as the stolen horses, and leading them up Main street, in
the city of Council Bluffs, on the morning of November
8, 1886, and that he saw him about nine o'clock that
morning at the dummy depot on Broadway, with the
same team, and that he took them on the transfer train,
which started towards Omaha.   This witness was exam-
ined upon the preliminary examination, and upon the first
trial, and it appears from the record that his testimony
upon the last trial, as to identifying the defendant as being
the person in possession of the team at Council Bluffs, is
not consistent with his testimony given on the first trial,
and at the preliminary hearing.   And another witness,
who was present at the time the team was put upon the
transfer, testified that the animals were in possession of a
tall man and a short man, and that neither of them was the
defendant.   Another witness stated that he saw a tall
man and a short man in the neighborhood of where the
team was stolen on the evening before they were taken.
Several other witnesses testified that the defendant was
in the city of Omaha on the night in which the horses
were stolen.

The principal question presented in argument is
that the verdict is not supported by the evidence.   We
have set out the evidence somewhat in detail, for the
purpose of showing that it presented a proper case for
the determination of a jury.   There is no such absence

of evidence of guilt as to warrant the interference of this court. It is true that the witness Wesley did not on the three occasions on which he testified give the same dates at which he claims he saw the defendant in possession of the horses at Council Bluffs, and he did not give exactly the same description of the person as to his clothes, whiskers, etc. But it is quite certain that he saw the team, because the witness for the defendant who was present testified that Wesley was at the dummy train when the horses were shipped. Taking the evidence all together, we are content to let the judgment stand.

II. One ground of the motion for a new trial was based upon alleged newly-discovered evidence. The application was based upon certain affidavits, from which it appears that two witnesses, who were present at the transfer when the horses were shipped to Omaha, will testify that the same were not in the possession of the defendant, and that he was not present at that time and place. This evidence is cumulative. It is of the same kind and to the same point as other evidence which was introduced upon the trial. A new trial will not be granted for newly-discovered evidence which is merely cumulative (*Reeves v. Royal*, 2 G. Greene, 451; *Manix v. Malony*, 7 Iowa, 81; *Morrow v. Railway Co.*, 61 Iowa, 487); and it has been determined by this court that the statute does not authorize a new trial, in a criminal case, upon the ground of newly-discovered evidence, (*State v. Bowman*, 45 Iowa, 418).

*2. CRIMINAL law: new trial: newly-discovered and cumulative evidence.*

III. The defendant was not examined as a witness in his own behalf. It is claimed that the county attorney, in his address to the jury, was guilty of such misconduct as to entitle the defendant to a new trial, because he made the statement to the jury that the defense "did not dare to put the defendant on the witness stand." It is provided by section 3636 of the Code that the fact that the defendant is not introduced as a witness in his own behalf shall not have any weight against him on the trial,

*3. ——: misconduct of counsel: appeal: record.*

nor shall the attorneys for the state during the trial refer to the fact that the defendant did not testify in his own behalf, and, if they do so, the defendant shall for that cause alone be entitled to a new trial. But the record does not show that the county attorney violated the section of the statute above referred to It rather appears that he did not. The court below must have so held, and we think correctly.

IV. It appears to us that the charge given by the court to the jury, and the manner in which the trial was conducted, were fair, and even liberal, towards the defendant, and we discover no reason why the judgment should not be enforced. AFFIRMED.