## THE STATE v. JONES.

1. **Criminal Practice**: PLEA OF "NOT GUILTY" ENTERED BY DEFENDANT'S COUNSEL IN HIS ABSENCE. A plea of not guilty may properly be entered by defendant's counsel in his absence.

2. **Mayhem**: INTENTION OF DEFENDANT: NATURAL CONSEQUENCES OF ACTS. On an indictment for disfiguring the person of another in the midst of an altercation, *held* that the court properly instructed the jury that a specific intent on the part of defendant to disfigure was an essential element of the crime, but that such intent might be inferred or presumed if he did the act deliberately, and the disfigurement was reason-

ably to be apprehended as the natural and probable consequence of the act, but that they ought to consider all the circumstances of the trans-action in determining whether the specific intent existed in his mind at the time, or whether he did the act deliberately.

3. ———: ———: EVIDENCE. In such case, the court properly refused to instruct the jury that, as an intent to disfigure was an essential element of the crime, they would not be warranted in convicting, unless there was other evidence of such intent than the mere presumption which might arise from the doing of the act in the manner in which it was done.

### *Appeal from Howard District Court.*

### WEDNESDAY, DECEMBER 22.

THE defendant was accused of the crime of disfiguring, committed, as was charged in the indictment, by biting, slitting and tearing off the nose of one Richard Hughes, with intent to disfigure said Hughes. He was found guilty of the offense by the verdict of a jury, and the court sentenced him to a term of imprisonment in the penitentiary, and from that judgment he appeals.

*A. J. Baker, Attorney-general,* for the State.

No appearance for the defendant.

REED, J.—One of the grounds of defendant's motion for a new trial was that the plea of "not guilty," on which he was tried, was entered by the counsel who appeared for him, and that he was not personally present in court when the plea was entered. It is provided by statute (Code, § 4361) that "the plea of guilty can only be put in by the defendant himself in open court." But there is no special provision with reference to the entry of the plea of "not guilty" except that contained in section 4367, which requires the court to enter that plea when the defendant refuses to answer the indictment. It is a very common practice for counsel to put

1. CRIMINAL practice: plea of "not guilty" entered by defendant's counsel in his absence.

in the plea for the defendant, and this is often done in his absence, and we think this practice is perfectly proper. No possible prejudice could result to the defendant from it. But, if the practice should be regarded as irregular, we could not disturb the judgment in the present case on this ground, for the defendant had every advantage and privilege on the trial which he would have enjoyed if the plea had been regularly entered; and we have held that we will not reverse the judgment when the trial has been regularly conducted in every respect, even though the plea of "not guilty" has not in fact been put in. *State v. Greene*, 66 Iowa, 11; *State v. Hayes*, 67 Id., 27.

II. The offense of which the defendant was convicted is defined by section 3857 of the Code as follows: "If any

2. MAYHEM: intention of defendant: natural consequences of acts.

person, with intent to maim or disfigure, cut or maim the tongue, cut out or destroy an eye, cut, slit or tear off an ear, cut, bite, slit or mutilate the nose or lips, cut off or disable a limb, or any member of another person, he shall be punished * * *." The evidence given on the trial warranted the jury in finding that an altercation occurred between the defendant and Hughes at the time in question, in which defendant bit or tore off a portion of Hughes' nose, and that the injury had the effect to disfigure him. There was a conflict in the evidence as to which of the parties was the original aggressor in the transaction. But, conceding that Hughes was the assailant, the jury were warranted in finding that the act of defendant in inflicting the injury charged in the indictment was not excusable on the ground that it was committed in the reasonable and necessary defense of his own person from injury by the assailant. The district court instructed the jury, in effect, that the injury to Hughes, alleged in the indictment, would be established by proof that defendant had bitten or torn off a portion of his nose, but that they would not be justified in convicting him unless they were satisfied that he did not commit the act in

reasonable and lawful defense of his own person from injury; also that a specific intent on his part to disfigure Hughes was an essential element of the crime, and that such intent might be inferred or presumed if he did the act deliberately, and the disfigurement of Hughes was reasonably to be apprehended as the natural and probable consequence of the act, but that they ought to consider all the circumstances of the transaction in determining whether the specific intent existed in his mind at the time, or whether he did the act deliberately. The instructions afford the defendant no ground of exception. They are an application to the evidence in the case of the familiar rule of the law that men are presumed to intend all the natural and probable consequences of their own deliberate acts.

III.  Counsel for the defendant asked the court to instruct the jury that, as an intent to disfigure was an essential

3. ——: ——: element of the crime, they would not be war-
evidence.      ranted in convicting, unless there was other evidence of the existence of such intent than the mere presumption which might arise from the doing of the act, or the manner in which it was done. , The court rightly refused to give this instruction.   Whether the intent charged existed in the mind of the defendant when he committed the act was a question of fact.   When the state of facts was proven which would raise a presumption that the intent existed in legal contemplation, the fact of its existence was established.  The instruction would require the production by the state of a greater amount of evidence than was essential for the establishment of the fact which it sought to prove.  This would be an absurd rule.

We have found no error in the record, and the judgment will be

                                        AFFIRMED.